NOT FOR PUBLICATION                    [Docket Nos. 25, 27]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| DAVID STEINBERG, Individually and on behalf of all other similarly situated employees | Civil No. 10-CV-5600 |
| Plaintiffs, | (RMB-JS) |
| v. | |
| TD BANK, N.A., | **OPINION** |
| Defendant. | |

Andrew J. Sciolla, Esq.
Harris L. Pogust, Esq.
Pogust, Braslow & Millrood, LLC
Eight Tower Bridge, Suite 1520
161 Washington Street
Conshohocken, PA 19428

        Attorneys for Plaintiffs and Collective Class

Kathleen McLeod Caminiti, Esq.
Jason A. Storipan, Esq.
Fisher & Phillips LLP
430 Mountain Avenue
Murray Hill, New Jersey 07974

        Attorneys for Defendant

**BUMB**, United States District Judge:

        Named Plaintiff David Steinberg, and Plaintiffs Edna

Bratek, Lois Skoff, Diane DeLuca, Jewelene Boyce, David Janke,

and Jinnette Cora (collectively "Plaintiffs"), have moved for

Conditional Certification of Collective Class under 29 U.S.C. §
216(b) of the Fair Labor Standards Act ("FLSA").  Plaintiffs
have also requested: (1) court-supervised notice, with at least
a 75-day notice period; (2) discovery of certain contact
information for the putative class members; and (3) that
Defendant TD Bank, N.A. ("Defendant") be required to post a
notice at all TD Bank call center locations regarding the
action.  For the reasons that follow, Plaintiffs' Motion for
Conditional Class Certification is GRANTED.  Plaintiffs' request
for court-supervised notice is GRANTED, in part, and DENIED, in
part.  Plaintiffs' request for contact information is GRANTED,
in part, and DENIED, in part.  Plaintiffs' request for Defendant
to post notice is DENIED.

I. Background

     TD Bank, N.A. ("TD Bank") is a banking company that was
formed on March 31, 2008, when two separate and distinct banking
companies, TD Banknorth, N.A. ("Banknorth"), and Commerce Bank,
N.A. ("Commerce") merged.  (Def's Opp. at 3.)  Before the
merger, Commerce maintained customer service call centers in Mt.
Laurel, New Jersey and Harrisburg, Pennsylvania, and Banknorth
maintained call centers in Lewiston/Auburn, Maine, and
Springfield, Massachusetts.  (Id. at 4.)  The two entities fully
integrated their call center operations on September 26, 2009
(the "Integration Date").  (Id.)

Plaintiffs David Steinberg, Edna Bratek, Lois Skoff, Diane DeLuca, and Jewelene Boyce, were employed as customer service representatives, known as Banking Specialists, of varying specialties, at Defendant's call center in Mount Laurel, New Jersey.  (Pls' Br. at 4.)  Plaintiffs David Janke and Jinnette Cora are currently employed as Banking Specialists at Defendant's call center in Lewiston/Auburn, Maine.  (Id.)

While Plaintiffs hail from two different call center locations and had different supervisors, they share common grievances: 1) that they and their fellow Banking Specialists were required to arrive 15-30 minutes in advance of their scheduled shift times to turn on and prepare their computer systems, but were not allowed to "clock in" until just before their shifts officially began; and 2) that they and their fellow Banking Specialists were required to attend monthly "Lunch and Learn" training sessions, but were not permitted to record time spent at such sessions.  (Compl. ¶¶ 15-16.)  They assert that, under the FLSA, they were non-exempt, hourly employees, and entitled to overtime pay for any hours worked over forty per week.  Id. ¶ 17; Pls' Br. at 4; 29 U.S.C. § 207(a)(2)(C).  They claim that, to the extent these non-recorded hours constitute overtime, they were not properly compensated for that time.  (Compl. ¶ 17.)  Plaintiffs bring this action under 29 U.S.C. § 216(b) of the FLSA on behalf of similarly situated Banking

3

Specialists to recover unpaid wages for time worked "off the clock."

In support of these assertions, Plaintiffs have offered evidence that:

(1)    despite their different specific titles, the "only substantive difference" between the various Banking Specialist positions was "the content of the customer phone calls" (Pls' Br. at 4, 12; Banking Specialist Job Description, Ex. 2 to Pls' Br.; Janke Dep. at 193:14 – 194:11 (testifying that there were no differences between two specific Banking Specialist positions other than the content of the phone calls and adherence percentages); DeLuca Dep. at 118:20 – 119:25 (testifying that besides the content of the calls, there were no differences between specialists and non-specialists within the Banking Specialist position));

(2)    all Banking Specialists shared the same accountabilities, were subject to the same policies and procedures under the same TD Bank handbook, had the same job description, logged into the same company-wide server, and accessed and logged-in to the same software applications (Pls' Br. at 12-13; Banking Specialist Job Description, Ex. 2 to Pls' Br.; Skoff Dep. at 101:20-24 (testifying that accountabilities were common for all Banking Specialists); Steinberg Dep. at 199:19-23 (testifying that the "summary, responsibilities and requirements" applied to all Banking Specialists); Steinberg Dep. at 200:4-20 (testifying that all Banking Specialists had the same handbook given to them); Bratek Dep. at 67:16 – 68:11 (testifying that core customer service representatives and loan service specialists had the same adherence expectations); Janke Dep. at 194:16 – 195:20 (testifying that he used the same software when working as a Banking Specialist I and as a Banking Specialist III, and also used the same software in the Mount Laurel, New Jersey and Lewiston/Auburn, Maine call centers); Janke Dep. at 173:24 – 175:21 (testifying that when a team of Banking Specialists representing all call center locations was assembled at the Mount Laurel, New Jersey location, all Banking

4

Specialists on the team took core calls, and none required additional training));

(3)   TD Bank, and the individual supervisors, "stressed the importance of being prepared to take phone calls *immediately* at the scheduled start time" (Pls' Br. at 14-15 (emphasis in original); Banking Specialist Job Description, Ex. 2 to Pls' Br. (stating that Banking Specialists should "[b]e punctual and logged-in ready to receive/make Customer calls as scheduled throughout the shift"); Cunningham Email to Steinberg, DeLuca, Other Banking Specialists, Ex. 25 to Pls' Br. ("You should arrive several minutes early to ensure you can find a seat and be ready to take your first call at your scheduled start time.); Janke Dep. at 57:20 – 58:5 ("[I] was told that I needed to be ready for my shift and to have my systems ready when I clock in in order to be ready to take a phone call"); DeLuca Dep. at 30:7-10 (testifying that she needed to have her systems up and running at the scheduled start time));

(4)   in order to be prepared to field calls immediately at their scheduled start times, Banking Specialists generally arrived at work before their scheduled start times so that they could load necessary software applications prior to their scheduled start times (Pls' Br. at 15-16; Bratek Dep. at 151:2-14 (testifying that she logged-on to her computer 14-15 minutes prior to her scheduled shift time); Steinberg Dep. at 228:24 – 229:18 (testifying that he saw other Banking Specialists arrive before their scheduled shift times and that he had conversations with other Banking Specialists about this practice); Janke Dep. at 48:3 – 49:22 (testifying that he needed to be prepared for his first call right at his scheduled start time, which required coming in approximately 15 minutes early); Skoff Dep. at 43:23 – 44:4 (testifying that it took upwards of 20 minutes to log-on to the computer systems); Boyce Dep. at 26:12 – 28:2 (testifying that at a team meeting, a supervisor told the team that "because of our adherence, they expect us to be on the phone at [the scheduled start time] to take that first call; and if we have to come in there [20 minutes] early . . . be there 20 minutes [early]."));

(5)   Banking Specialists were instructed not to clock-in
      before their scheduled start times, or only 2-3
      minutes before their start times (Pls' Br. at 15-16;
      Janke Dep. at 47:15-24 (testifying that during his
      training, Janke's group was told "to put in the exact
      time that we . . . punched in and that our time should
      reflect no more than a minute or so prior to our
      scheduled shift"); Janke Dep. at 56:16 - 58:25
      (testifying that three different managers told him not
      to clock in before his scheduled shift time, and that
      after he attempted to clock in five minutes prior to
      his scheduled shift time, he was told by a manager not
      to do this); Steinberg Dep. at 86:19-25 (testifying
      that "all the supervisors I've had at team meetings"
      told him not to clock in until his authorized start
      time); DeLuca Dep. at 107:7 - 108:4 (testifying that
      in training, she was told the order in which to bring
      up systems and that she could only clock-in 2 minutes
      before her scheduled shift time); Boyce Dep. at 26:5 -
      28:9 (testifying that of the three supervisors she
      had, "every supervisor" instructed her to be there and
      start 20 minutes early, that she was told this at
      "every team meeting we had," and that she was told to
      clock-in only three minutes prior to her scheduled
      shift time)):

(6)   identical "Lunch and Learn" training sessions were
      held for all Banking Specialists at all call center
      locations during the lunch breaks of various Banking
      Specialists (Pls' Br. at 17-18; Master Lunch and Learn
      List, Ex. 26 to Pls' Br.);

(7)   despite taking attendance at these Lunch and Learn
      training sessions, and despite the fact that
      supervisors were expected to review and approve their
      team members' time entries each pay period before
      their time was released, Defendant did not itself
      ensure that Banking Specialists were compensated for
      their time (Pls' Br. at 19; Pls' Reply at 7-8; Janke
      Dep. at 147:4-21 (testifying that he was required to
      participate in Lunch and Learns during unpaid lunch
      breaks); Skoff Dep. at 62:8 - 63:3 (testifying that
      although he attended Lunch and Learns during his lunch
      break, he was not paid for attending); Bratek Dep. at
      156:12-21 (testifying that she clocked-out and would
      then go to Lunch and Learns); Cora Dep. at 95:3-21
      ("Recently they've started paying for the lunch if you

go [to the Lunch and Learn] during your lunch, but
back then, if you went during your lunch, you just
went during your lunch.")); and

(8)   Banking Specialists were, in fact, told to clock-out
for the Lunch and Learn programs (Pls' Br. at 18-19;
DeLuca Dep. at 41:5-20 ("We were told when your
lunchtime comes, you will go to the Lunch and Learn.
So you definitely had to clock out.  You were on your
lunch break."); Boyce Dep. at 98:20-25 (testifying
that, although she could not recall who told her, she
was told to clock out for Lunch and Learns); Janke
Dep. at 132:7-20 (testifying that he was told via e-
mail to clock out for Lunch and Learns).

In turn, Defendant has offered evidence that:

(1)   Plaintiffs do not have written documentation to
support their claims that they were told to work off-
the-clock (Def's Opp. at 13);

(2)   some Plaintiffs do not remember who exactly told them
to start working before clocking-in, and they were not
instructed on what order to open their computer
programs  (Id.);

(3)   other Banking Specialists have certified that they
have been compensated for all time worked (Id. at 13-
14 (citing to certifications));

(4)   Plaintiffs worked for different supervisors, who
provided varying instructions (Id. at 14-17);

(5)   practices varied between and among Banking Specialists
(Id. at 17-19, 21-22);

(6)   records indicate that some Banking Specialists
clocked-in before logging into the other computer
programs (Id. at 20-21);

(7)   experiences varied by specific Banking Specialist
position and by call center location (Id. at 22-23);

(8)   Commerce's training regarding clock-in procedures
varied from that of Banknorth, especially prior to the
Integration Date (Id. at 21, 26-27);

(9)  Defendant's general written policy was to record all
     time worked (Id. at 28.); and

(10) Defendant disseminated e-mails specifically
     instructing Banking Specialists not to clock-out when
     they attended Lunch and Learn sessions (Id.).

With respect to Defendant's e-mails regarding not having to
clock-out during the Lunch and Learn sessions, Plaintiffs
submitted evidence that these e-mails were not distributed
during the operative time period.  (Pls' Br. at 19; Cora Dep. at
158:25 - 159:7 (testifying that the above instruction was first
given approximately two or three months before her deposition in
October, 2011); Janke Dep. at 187:19 - 188:23 (testifying that
prior to May, 2011, the instructions above were not given in e-
mails)).

II. Standard

Under 29 U.S.C. § 216(b), the FLSA authorizes employees to
bring a claim on behalf of other employees "similarly situated"
who were affected by an employer's common policy.  White v. Rick
Bus Co., 743 F. Supp. 2d 380, 386 (D.N.J. 2010).  Unlike class
actions subject to Federal Rule of Civil Procedure 23, where
each person within the class is presumed to be a member of the
class unless he "opts-out," collective actions under the FLSA
require members of the class to "opt-in" to a civil action.  See
La Chapelle v. Owens-Illinois, Inc., 513 F.2d 286, 288 (5th Cir.
1975).

In determining whether a suit should proceed as a collective action under the FLSA, most courts utilize a two-tiered analysis. Symczyk v. Genesis HealthCare Corp., 656 F.3d 189, 192 (3d Cir. 2011). During the first stage, the court "makes a preliminary determination whether the employees enumerated in the complaint can be provisionally categorized as similarly situated to the named plaintiff." Id. at 192-193 (citations omitted). The court does not consider the merits of the dispute at this time, and the plaintiff must only demonstrate that the potential class members' "positions are similar, not identical," to his own. Sperling v. Hoffmann-La Roche, Inc., 118 F.R.D. 392, 405 (D.N.J. 1988), aff'd in part, appeal dismissed in part sub nom. Sperling v. Hoffman-La Roche Inc., 862 F.2d 439 (3d Cir. 1988), aff'd and remanded sub nom. Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165 (1989) (citations omitted); Shakib v. Back Bay Rest. Grp., Inc., No. 10-CV-4564, 2011 WL 5082106, at *2 (D.N.J. Oct. 26, 2011) ("The merits of the plaintiff's claim need not be evaluated and discovery need not be completed in order for such notice to be granted and disseminated."). Potential differences in damages calculations among members of the plaintiff class do not preclude conditional certification. Shakib, 2011 WL 5082106, at *4 (citing Sanchez v. La Cocina Mexicana, Inc., No. 09 Civ. 9072, 2010 WL 2653303, at *1 (S.D.N.Y. July 1, 2010); Elliott v.

Amspec Servs., LLC, No. 10-CV-6575, 2011 WL 6002019, at *4
(D.N.J. Nov. 29, 2011) ("the necessity for calculation of
damages on an individual basis should not preclude class
determination *when the common issues which determine liability
predominate*") (citing Holmes v. Pension Plan of Bethlehem Steel
Corp., 213 F.3d 124, 137 (3d Cir. 2000) (emphasis in original).

To determine whether the proposed recipients of opt-in
notices are similarly situated,[1] the Third Circuit utilizes a
"modest factual showing" standard.  Symczyk, 656 F.3d at 192
(stating that the modest factual showing standard "best comports
with congressional intent and with the Supreme Court's directive
that a court 'ascertain[ ] the contours of [a collective] action
at the outset'")(quoting Hoffmann–La Roche, 493 U.S. at 172)).
The modest factual showing analysis is performed using a lenient
standard.  See Pereira v. Foot Locker, Inc., 261 F.R.D. 60, 64
(E.D. Pa. 2009) (using an "extremely lenient standard"); Ritzer
v. UBS Fin. Servs., Inc., No. 08-CV-01235, 2008 WL 4372784, at
*2 (D.N.J. Sept. 22, 2008) (utilizing a "fairly lenient

---

[1] The Third Circuit has noted that, while "[n]either FLSA nor the
ADEA define the term 'similarly situated,'" a representative,
but not exhaustive, list of relevant factors to consider include
"whether the plaintiffs are employed in the same corporate
department, division and location; advanced similar claims [];
sought substantially the same form of relief; and had similar
salaries and circumstances of employment."  Ruehl v. Viacom,
Inc., 500 F.3d 375, 389 n.17 (3d Cir. 2007).

standard"); Shakib, 2011 WL 5082106, at *2 (stating a court's determination "typically results in conditional certification of a representative class") (citing Herring v. Hewitt Assocs., Inc., No. 06-267, 2007 WL 2121693, at *2 (D.N.J. July 24, 2007).

Although this is a lenient standard, it does require "some evidence beyond mere speculation that the defendant's policy affected other employees." Wright v. Lehigh Valley Hosp., No. 10-431, 2010 WL 3363992, at *3 (E.D. Pa. Aug. 24, 2010); see also Symczyk, 656 F.3d at 193 (requiring a "factual nexus between the manner in which the employer's alleged policy affected [the plaintiff] and the manner in which it affected other employees"); Prise v. Alderwoods Grp., Inc., 817 F. Supp. 2d 651, 670 (W.D. Pa. 2011) (stating that members of a putative class must show that they "were together the victims of a single decision, policy or plan"); Manning v. Goldbelt Falcon, LLC, No. 08-3427, 2010 WL 3906735, at *2 (D.N.J. Sept. 29, 2010) reconsideration denied, No. 08-3427, 2011 WL 5828497 (D.N.J. Nov. 17, 2011) (holding that conditional certification is appropriate when "the plaintiff and the proposed representative class members allegedly suffered from the same scheme"); Aquilino v. Home Depot, Inc., No. 04-CV-4100, 2006 WL 2583563, at *2 (D.N.J. Sept. 7, 2006) (requiring a "factual nexus" between the named plaintiffs and potential opt-in plaintiffs).

Specifically, a plaintiff cannot rely solely on the allegations in the complaint, and must instead provide factual support in the form of pleadings, affidavits, deposition testimony, or other supporting documents.  See Anyere v. Wells Fargo Co., No. 09-2769, 2010 WL 1542180, at *2 (N.D. Ill. Apr. 12, 2010) ("A 'modest factual showing' . . . cannot be founded solely on allegations in the complaint; some factual support must be provided, such as in the form of affidavits, declarations, deposition testimony, or other documents."); White, 743 F. Supp. 2d at 386 (stating that courts examine the pleadings and certifications submitted by plaintiff).

If, at this first stage, the plaintiff carries his burden, "the court will 'conditionally certify' the collective action for the purposes of notice and pretrial discovery." Symczyk, 656 F.3d at 192-93.  At this time, when necessary, district courts have the authority to supervise the notification process, including how much time plaintiffs are given to notify class members, how class members are to be notified, and what contact information plaintiffs are afforded.  See Hoffmann-La Roche, 493 U.S. at 170-72 ("By monitoring preparation and distribution of the notice, a court can ensure that it is timely, accurate, and informative."); Pereira, 261 F.R.D. at 68-69 (defining the appropriate means of notice, determining whether posting notice is appropriate, determining the appropriate notice period, and

directing the parties to meet and confer regarding the wording and form of the notice); Ritzer, 2008 WL 4372784, at *4-5 (stating that "courts possess broad discretion to provide court-facilitated notice," authorizing the specific wording of an entire notice provision, and determining an appropriate means of notice).   In this regard, the court must "strike the appropriate balance in ensuring notification to the [potential class] while minimizing disturbance to [defendant's] business."  Hallissey v. Am. Online, Inc., No. 99-CIV-3785, 2008 WL 465112, at *3 (S.D.N.Y. Feb. 19, 2008).

        With respect to the notice period, courts have authorized different amounts of time and methods of notification depending on the particular circumstances of the case, but 30-60 days is generally sufficient.   See, e.g., Hallissey, 2008 WL 465112, at *1, 4 (allowing a 60 day notification period with delivery via e-mail and first class mail for an estimated potential class of 13,000, where defendant agreed e-mail notification would be appropriate, but requiring hand-signed consents be submitted by mail or facsimile); Martinez v. Cargill Meat Solutions, 265 F.R.D. 490, 501 (D. Neb. 2009) ("Forty-five days is sufficient time for putative plaintiffs to consider their options and, if desired, seek the assistance of outside counsel in deciding whether to join this lawsuit . . . . [i]n contrast . . . 120 days will substantially delay the progress of this litigation);

13

Williams v. Long, 585 F. Supp. 2d 679, 692 (D. Md. 2008)
(allowing 30 day notification period); Baden-Winterwood v. Life
Time Fitness, No. 06 CV 99, 2006 WL 2225825, at *3 (S.D. Ohio
Aug. 2, 2006) (allowing 45 day period because "sixty (60) days
is too long and would needlessly delay the litigation.  On the
other hand, thirty (30) days is too short because of forwarding
issues with the United States Postal Service and because that
time period does not allow potential plaintiffs to fully
consider their options and contact their own attorney should
they so desire.").

        With respect to the form of notice and contact information
requested, first class mail and home addresses are generally
deemed sufficient, and additional information and contact
methods are typically provided only if necessary.  See
Bredbenner v. Liberty Travel, Inc., No. 09-CV-00905, 2009 WL
2391279, at *3 n.3 (D.N.J. July 31, 2009) ("Courts generally
release social security numbers only after notification via
first class mail proves insufficient."); Ritzer, 2008 WL
4372784, at *4 ("Unless notification via first class mail proves
insufficient, social security numbers and telephone numbers
should not be released."); Martinez, 265 F.R.D. at 500
(declaring that first class mail would be sufficient because
"[t]here is no evidence personal mailing will be an unreliable
means of delivering notice to the putative plaintiffs"); Reab v.

14

Elec. Arts, Inc., 214 F.R.D. 623, 631 (D. Colo. 2002) ("First class mail ensures, at the outset, that the appropriately targeted audience receives the intended notification and maximizes the integrity of the notice process.").

In the second stage, after discovery and with a more substantial record, a court then determines "whether each plaintiff who has opted-in to the collective action is in fact similarly situated to the named plaintiff." Symczyk, 656 F.3d at 193. At this second stage, the defendant can move to decertify the class, and the burden of proof on the plaintiff is higher than in the first stage. Manning, 2010 WL 3906735, at *2. At this latter stage, the court considers whether individualized differences among the plaintiffs make the claims more suitable for individualized, as opposed to class, treatment. See Bishop v. AT & T Corp., 256 F.R.D. 503, 509 n.7 (W.D. Pa. 2009)(finding that whether claims are too individualized to be handled as a class is "relevant to determination of a stage two decertification issue after discovery has closed"); Anyere, 2010 WL 1542180, at *3 ("[Defendant] will have the opportunity to argue that individualized determinations predominate at the second step of the certification process, after more extensive discovery has occurred."); Jirak v. Abbott Labs., Inc., 566 F. Supp. 2d 845, 850 (N.D. Ill. 2008) ("Defendant's argument about

dissimilarities in the class is more appropriately decided at step two, after it is known who the class will consist of, and after some of the factual issues can be fleshed out in discovery.").

In stage two, if the court determines the opt-in plaintiffs are similarly situated, then the case may proceed to trial as a collective action. Manning, 2010 WL 3906735, at *2.  If the court determines that the plaintiffs are not similarly situated, then the class will be decertified or split into subclasses. Id.

III. Analysis

   A. Conditional Certification

Plaintiffs have alleged, and provided factual support for their claim, that Banking Specialists were similarly situated to one another in that they were subject to unwritten company-wide policies that violated the FLSA.  Specifically, as discussed above, Plaintiffs provide evidence that: (1) the jobs of all Banking Specialists were substantially similar; (2) Banking Specialists were generally told that they needed to arrive early and be prepared for the day prior to clocking-in; (3) attendance at Lunch and Learn sessions was expected; (4) Banking Specialists were told not to bill or record their pre-start time; and (5) Banking Specialists were told not to bill for time spent at Lunch and Learn sessions, or, at the least, Defendant

16

did not ensure that Banking Specialists were compensated for this time, even though it had reason to be aware of this time. Where a company knows, or should know, of employees working overtime, it is the company's responsibility to ensure that they are paid for all time worked.[2]  If these alleged claims are true, these policies would violate the FLSA.  Plaintiffs have therefore presented sufficient evidence demonstrating that members of the proposed class are similarly situated and that conditional certification is appropriate.  See Manning, 2010 WL 3906735, at *2 (holding that conditional certification is

---

[2] See Chao v. Gotham Registry, Inc., 514 F.3d 280, 287-88 (2d Cir. 2008) ("An employer who has [actual or imputed] knowledge that an employee is working, and who does not desire the work be done, has a duty to make every effort to prevent its performance. . . . This duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours."); Edwards v. City of New York, No. 08 Civ. 3134, 2012 WL 1694608, at *3 (S.D.N.Y. May 15, 2002) ("[O]nce an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation even where the employee fails to claim overtime hours.")(citing Holzapfel v. Town of Newburgh, NY, 145 F.3d 516, 524 (2d Cir. 1998); Holley v. Erickson Living, CIV.A. 11-2444, 2012 WL 1835738, at *6 (E.D. Pa. May 21, 2012) (stating that the "burden is upon employer to ensure employees are compensated for meal-break work, and that employer must 'police and oversee hourly workers and their supervisors to ensure that when working through or during unpaid meal breaks they are compensated'") (quoting Colozzi v. St. Joseph's Hosp. Health Ctr., 595 F. Supp. 2d 200, 206-207 (N.D.N.Y. 2009)).

appropriate when "the plaintiff and the proposed representative class members allegedly suffered from the same scheme").

Defendant argues that Plaintiffs are not, in fact, similarly situated, and that conditional certification should be denied.  Defendant contends that: (1) there is insufficient evidence of a common, illegal, company-wide policy because Plaintiffs have not offered evidence of any written policy and Defendant, in fact, had a written policy requiring that all time worked be paid; (2) differences in employee clock-in practices, specific call center practices (particularly pre-Integration), location, and supervisor instructions, outweigh similarities among Banking Specialists; (3) Defendant provided Plaintiffs with specific instructions to bill for the Lunch and Learn sessions; (4) Defendant's records demonstrate that some Banking Specialists, including some Plaintiffs, almost always clocked-in before their scheduled start time; (5) many Banking Specialists did, in fact, record and get paid for all time worked; and (6) individualized issues of proof and defenses, particularly hours of overtime worked, would make Plaintiffs' claims more suitable for individual resolution.

These purported deficiencies do not undermine the Court's conclusion that conditional certification is appropriate for four reasons.  First, as discussed above, conditional certification only requires that plaintiffs be similarly

situated, not identical; some differences can therefore be
tolerated.  See Sperling, 118 F.R.D. at 405 (holding that a
plaintiff must only demonstrate that potential class members'
"positions are similar, not identical," to his own).  Second,
inconsistencies in Plaintiffs' individual accounts, such as
Plaintiffs' claims that they did not clock-in before opening
other programs, when Defendant has records to the contrary, go
more to the merits, which this Court does not consider at this
stage of Plaintiffs' claim.  See, e.g., Def's Opp. at 20
(describing how, despite Boyce's claims of logging-in to
programs before clocking-in, Defendant's records demonstrate
that Boyce clocked-in before logging-in to a program 97% of the
time); see also Shakib, 2011 WL 5082106, at *2 ("Simply put,
arguments concerning actual payment of overtime hours or the
existence of a written policy to do so go to the merits of a
case, and are thus inapplicable at this stage of the
litigation.").  Third, issues of individualized proof and
defenses are more appropriately addressed at the second stage of
certification, and issues of damages will not preclude
certification where, as alleged here, the common issues of
liability dominate.  See Elliott, 2011 WL 6002019, at *4 ("the
necessity for calculation of damages on an individual basis
should not preclude class determination *when the common issues*
*which determine liability predominate*") (citation omitted)

19

(emphasis in original); Bishop, 256 F.R.D. at 509 n.7 (finding that whether claims are too individualized to be handled as a class is a stage two, not a stage one inquiry).

Fourth, many of these contentions are not legally or factually material.  Contrary to Defendant's contention, a written policy is not required, and an unwritten but company-wide policy, as Plaintiffs offer evidence of here, is sufficient even where the unofficial policy is contrary to the official written policy.  See, e.g., Sabol, 2010 WL 1956591, at *5 (holding that the court would not deny certification based on Defendant's official corporate policies); Pereira, 261 F.R.D. at 67 (stating that a company's official policies and procedures are "not dispositive" in determining conditional certification stage).

Neither do differences in specialist location, specific responsibilities, managers, and potential damages calculations undermine the Court's conclusion.  In fact, all Banking Specialists had the same basic job and were subject to the same general policies, notwithstanding minor deviations in practice area.  And, the fact that different Plaintiffs worked at different call centers and with different supervisors, but nonetheless reported the same treatment, supports the notion that there was a company-wide policy.  Plaintiffs need only, and have successfully, demonstrated a modest factual showing that a

common policy violated the FLSA.  See Pereira, 261 F.R.D. at 64 (describing the modest factual showing as an "extremely lenient standard"); Ritzer, 2008 WL 4372784, at *2 (describing the modest factual showing as a "fairly lenient standard").

Plaintiffs also have offered evidence that the written instruction to record all time for Lunch and Learn sessions only began after the class period at issue began.  And, in any event, as discussed above, employers have an independent duty to ensure that employees are paid for all overtime work that they know or have reason to know about.  See Chao v. Gotham Registry, Inc., 514 F.3d 280, 287-88 (2d Cir. 2008) ("An employer who has [actual or imputed] knowledge that an employee is working, and who does not desire the work be done, has a duty to make every effort to prevent its performance. . . . This duty arises even where the employer has not requested the overtime be performed or does not desire the employee to work, or where the employee fails to report his overtime hours.").  Finally, to the extent that certain Banking Specialists recorded and were paid for their preparation and Lunch and Learn time, these Banking Specialists will simply not be class members or will not be eligible for damages.[3]

---

[3] Defendant also argues that "[m]any Banking Specialists typically did not work more than 40 hours in a week or work off the clock," and that therefore the FLSA provisions are not

21

B. Court-Supervised Notice

Plaintiffs also seek a 120-day opt-in period for the potential class of Banking Specialists, but conceded in their briefing, that a 75-day opt-in period would be a "sufficient compromise."  (Pls' Br. at 19-20; Pls' Reply at 15.) Plaintiffs further request that Defendant provide a computer-readable list of all Banking Specialists employed at all call centers in the United States within the last three years of the filing of their Motion for Conditional Certification of Collective Class, their last known mailing addresses, alternate addresses, all known telephone numbers, e-mail addresses, social security numbers, and dates of employment, within five business days of the Court granting this instant motion.  (Pls' Br. at 19-20.)  Additionally, Plaintiffs request that Defendant be required to post a notice at all TD Bank call center locations of the class action.  (Id. at 20.)

Defendant claims that a 120-day opt-in period would be excessive and unfairly prejudicial.  (Def's Opp. at 34.) Defendant argues that a 30-day opt-in period, or, at most, a 45-day period is appropriate.  (Id. at 35.)  Defendant does not dispute that first class mail would be appropriate, or argue against disclosure of mailing addresses.  (Id. at 35-36.)

---

triggered.  (Opp. at 33.)  To the extent this is true, these Banking Specialists will also not be class members.

However, Defendant argues that first class mail alone would be sufficient, that other means of notice would be excessive, and that disclosure of social security numbers, telephone numbers, and e-mail addresses would be inappropriate.  (Id.)

This Court agrees with Defendant.  A 45-day opt-in period is sufficient.  Plaintiffs have offered no reason, and this Court can see none, why a 45-day notice period would be insufficient.  See Martinez, 265 F.R.D. at 501 (stating that forty-five days is sufficient, and that 120 days would "substantially delay the progress of [the] litigation"); Williams, 585 F. Supp. 2d at 692 (allowing thirty days); Baden-Winterwood, 2006 WL 2225825, at *3 (allowing 45 days because "sixty (60) days is too long and would needlessly delay the litigation").  The parties shall meet and confer to develop an appropriate form of notice.[4]  Thereafter, once the parties have agreed on an appropriate notice form, Defendant shall furnish Plaintiff with the appropriate contact information (discussed below) for the proposed class by computer-readable list. Following this, the 45-day opt-in period shall begin.

---

[4] In doing so, the parties shall not place the court name in the heading of the notice, because it could be misconstrued as judicial support for the litigation.  Martinez, 265 F.R.D. at 499; see also Hoffmann-La Roche, 493 U.S at 174 ("trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action").

23

This Court also agrees with Defendant that allowing all of Plaintiffs' requests for notice would be excessive and unfairly prejudicial.  Courts generally require, and Plaintiffs have failed to offer, compelling reasons to allow notice mechanisms beyond first class mail or contact information beyond mailing addresses.  See Bredbenner, 2009 WL 2391279, at *3 n.3 ("Courts generally release social security numbers only after notification via first class mail proves insufficient."); Ritzer, 2008 WL 4372784, at *4 ("Unless notification via first class mail proves insufficient, social security numbers and telephone numbers should not be released."); Martinez, 265 F.R.D. at 500 (declaring that first class mail would be sufficient because "[t]here is no evidence personal mailing will be an unreliable means of delivering notice to the putative plaintiffs"); Reab, 214 F.R.D. at 631 ("First class mail ensures, at the outset, that the appropriately targeted audience receives the intended notification and maximizes the integrity of the notice process.").  Therefore, Defendant is ordered to provide a computer-readable list of all Banking Specialists employed at all call centers in the United States since Defendant's merger,[5] their last known mailing addresses (and

---

[5] Defendant argues, in passing, that Banking Specialists' claims are time barred pursuant to 29 U.S.C. § 255(a).  (Def's Opp. at 32-33).  Under 29 U.S.C. § 255(a), actions generally must be commenced within two years after the cause of action accrues;

alternate addresses if applicable), and dates of employment,
within five business days of the parties agreeing on an
appropriate notice form.  In the event that the notice period or
notice mechanisms provided by this Opinion prove insufficient,
Plaintiffs may revisit this issue with the Court at that time.

IV. <u>Conclusion</u>

Plaintiffs have made a "modest factual showing" that their
proposed class is similarly situated.  Therefore, their motion
for conditional certification is GRANTED.  Plaintiffs' request
for court-supervised notice is GRANTED.  Plaintiffs' request for
contact information is GRANTED, in part, and DENIED, in part, as
discussed above.  Plaintiffs' request for Defendant to post
notice is DENIED.

---

however, if there is a "willful violation," the action may be
commenced within three years of the cause of action accruing.
On the limited record before the Court, this Court will assume a
"willful violation" for purposes of this Motion, and therefore
apply the three-year statute of limitations.  29 U.S.C. §
255(a).  Because Plaintiffs' claims relate to post-merger
conduct, only post-merger employees are potential class members.
And, because the merger occurred on March 31, 2008, and the
Complaint in this action was filed on October 27, 2010, all
post-merger claims are within the three years statute of
limitations, and are therefore viable at this juncture.

s/Renée Marie Bumb
RENÉE MARIE BUMB
United States District Judge

Dated: June 27, 2012