**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

DAVID STEINBERG, Individually and on
Behalf of All other Similarly Situated
Current and Former Employees,

               Plaintiff,

      vs.

TD BANK, N.A.,

               Defendant.

Civil Action No. 1:10-CV-05600 (RMB-JS)

---

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR APPROVAL OF
THE PROPOSED SETTLEMENT AGREEMENT AND NOTICE TO CLASS**

---

**POGUST BRASLOW & MILLROOD, LLC**
Eight Tower Bridge, Suite 1520
161 Washington Street
Conshohocken, PA 19428
Phone:  (610) 941-4204
Fax:  (610) 941-4245
Attorneys for Plaintiff

*On the Brief:*
Harris L. Pogust, Esq.
Andrew Sciolla, Esq.

**FISHER & PHILLIPS LLP**
430 Mountain Avenue
Suite 303
Murray Hill, NJ 07974
Phone:  (908) 516-1050
Fax:  (908) 516-1051
Attorneys for Defendant

Kathleen McLeod Caminiti, Esq.
Jason A. Storipan, Esq.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES………………………………………………………………...ii-iv

I.     PRELIMINARY STATEMENT……………………………………………………..1

II.    NATURE OF THE LITIGATION...............................................................................1

III.   NATURE OF SETTLEMENT ....................................................................................2

IV.    THE PROPOSED SETTLEMENT SHOULD BE APPROVED ......................................4

       A.     THE SETTLEMENT IS A FAIR AND REASONABLE SETTLEMENT
              OF A BONA FIDE  DISPUTE............................................................................5

              1.     THE PARTIES HAVE A BONA FIDE DISPUTE ..................................6

              2.     THE SETTLEMENT IS FAIR AND REASONABLE..............................7

       B.     THE SETTLEMENT IS CONSISTENT WITH PUBLIC POLICY ......................8

       C.     THE SERVICE PAYMENT IS REASONABLE AND APPROPRIATE..............9

       D.     THE REQUEST FOR ATTORNEYS' FEES IS REASONABLE.......................11

              1.     THE SIZE AND NATURE OF THE FUND CREATED AND THE
                     NUMBER OF CLASS MEMBERS BENEFITTED BY THE
                     SETTLEMENT ....................................................................................12

              2.     THE ABSENCE OF OBJECTIONS.......................................................12

              3.     THE SKILL AND EFFICIENCY OF PLAINTIFFS' COUNSEL ...........12

              4.     COMPLEXITY AND DURATION OF THE LITIGATION ..................13

              5.     THE RISK OF NONPAYMENT ...........................................................14

              6.     THE TIME DEVOTED TO THIS CASE BY PLAINTIFFS'
                     COUNSEL ..........................................................................................15

              7.     AWARDS IN SIMILAR CASES ..........................................................15

              8.     VALUE OF BENEFITS ATTRIBUTABLE TO EFFORTS OF
                     CLASS COUNSEL AND INNOVATIVE TERMS OF SETTLEMENT..16

V.     CONCLUSION .......................................................................................................17

i

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

Page

*Barrentine v. Arkansas-Best Freight Sys.*,
    450 U.S. 728 (1981) ................................................................14

*Bradford v. Bed Bath & Beyond, Inc.*,
    184 F. Supp. 2d l342 (N.D.Ga. 2002)..........................................10

*Bredbenner v. Liberty Travel, Inc.*, No. 09-905,
    2011 WL 1344745 (D.N.J. April 8, 2011)............................5, 6, 7, 8, 9, 11, 17

*Buccellato v. AT&T Operations, Inc.*, No. C10–00463,
    2011 WL 4526673 (N.D.Cal. June 30, 2011) ................................9

*Castagna v. Madison Square Garden*, L.P., No. 09–10211,
    2011 WL 2208614 (S.D.N.Y. June 7, 2011)................................6, 7

*Clark v. Ecolab Inc.*, No. 07-8623,
    2010 WL 1948198 (S.D.N.Y. May 11, 2010).........................6, 7, 11

*Cranney v. Carriage Services, Inc.*, No. 2:07-01587,
    2008 WL 2457912 (D.Nev. June 16, 2008)................................10

*Cullen v. Whitman Med. Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000) ................................................9

*D.R. by MR. v. East Brunswick Bd. of Educ.*,
    109 F .3d 896 (3d Cir. 1997)....................................................8

*Dewey v. Volkswagen of America*,
    728 F. Supp. 2d 546 (D.N.J. 2010).............................................8

*Erie County Retirees Assoc. v. County of Erie, Pennsylvania*,
    192 F. Supp. 2d 369 (W.D. Pa. 2002) .......................................17

*Farris v. J. C. Penney, Inc.*,
    176 F.3d 706 (3d Cir. 1999)....................................................5,9

*Geer v. Challenge Financial Investors Corp.*, No. 05-1109,
    2007 WL 1341774 (D.Kan. May 4, 2007)..................................10

*Gunter v. Ridgewood Energy Corp.*,
    223 F.3d 190 (3d Cir. 2000)................................................12, 16

*Hall v. AT&T Mobility LLC,*
      2010 U.S. Dist. LEXIS 109355 (D.N.J. Oct. 13, 2010) ..................................................9

*In re AremisSoft,*
      210 F.R.D. 109 (D.N.J. 2002) .........................................................................................14

*In re AT&T Corp.,*
      455 F.3d 160 (3d Cir. 2006).............................................................................................11

*In re Cendant Corp. Sec. Litig.,*
      404 F. 3d 173 (3d Cir. 2005)............................................................................................12

*In re Diet Drugs Product Liability Litig.,*
      582 F.3d 524 (3d Cir. 2009)........................................................................................11, 12

*In re Gen. Motors,*
      55 F.3d 768 (3d Cir. 1995)...............................................................................................16

*In re Ikon Office Solutions, Inc. Sec. Litig.,*
      194 F.R.D. 16 (E.D. Pa. 2000).........................................................................................13

*In re Ins. Brokerage Antitrust Litigation,*
      579 F.3d 241 (3d Cir. 2009).............................................................................................13

*In re Janney Montgomery Scott LLC Financial Consultant Litigation*, No. 06-3202,
      2009 WL 2137224 (E.D.Pa. July 16, 2009).....................................................................10

*In re Rite Aid Corp. Sec. Litig.,*
      55 F.3d 768 (3d Cir. 1995)...............................................................................................16

*In re Safety Components, Inc. Sec. Litig.,*
      166 F. Supp. 2d 72 (D.N.J. 2001).....................................................................................17

*In re Warfarin Sodium Antitrust Litig.,*
      212 F.R.D. 231 (D. Del. 2002).........................................................................................13

*In re: Southern Ohio Correctional Facility*,
      175 F.R.D. 270 (S.D. Ohio 1997) ......................................................................................9

*Johnson v. Brennan*, No. 10-4712,
      2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)...................................................................9

*Krell v. Prudential Ins. Co.,*
      148 F.3d 283 (3d Cir. 1998)............................................................................................12

*Lenahan v. Sears, Roebuck & Co.,*
    2006 U.S. Dist. LEXIS 60307 (D.N.J. July 10, 2006) ................................... 12, 13, 14,16

*Louisiana Mun. Police Employees Retirement System v. Sealed Air Corp.,* No. 03-4372,
    2009 WL 4730185 (D.N.J. Dec. 4, 2009) ................................................................9, 11

*Lynn's Food Stores, Inc. v. U.S.,*
    679 F.2d 1350 (11th Cir. 1982).........................................................................4, 5, 6, 7

*Martin v. Selker Brothers,*
    949 F.2d 1286 (3d Cir. 1991)......................................................................................10

*McKenna v. Champion Int'l Corp.,*
    747 F.2d 1211 (8th Cir. 1984).......................................................................................5

*Mentor v. Imperial Parking Systems, Inc.,* No. 05-7993,
    2010 WL 5129068 (S.D.N.Y. Dec. 15, 2010) .............................................................10

*Morales v. PepsiCo, Inc.,*
    2012 U.S. Dist. LEXIS 35284 (D.N.J. Mar. 13, 2012) ...................................................5

*Oropeza v. AppleIllinois, LLC*, No. 06 C 7097
    2010 WL 3034247 (N.D.Ill. Aug. 3, 2010) ..................................................................10

*Serio v. Wachovia Securities, LLC,*
    2009 U.S. Dist. LEXIS 27992 (D.N.J. March 31, 2009)..........................................11, 16

*Smith v. Lowes Home Centers, Inc.,*
    236 F.R.D. 354 (S.D. Ohio. 2006) ...............................................................................10

*Stalnaker v. Novar Corp.,*
    293 F. Supp. 2d 1260 (M.D. Ala. 2003) .........................................................................4

*Stuart v. Radioshack Corp.,* No. C-07-4499,
    2010 WL 3155645 (N.D.Cal. Aug. 9, 2010)..................................................................10

*Torres v. Gristede's Operating Corp.,* Nos. 04-3316, 08-8531, 08-9627
    2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ..............................................................11

## State Statutes, Rules and Regulations

29 U.S.C. § 216(b) .......................................................... 1, 2, 4, 5, 7, 9, 10, 11, 13, 15

F.R.C.P. 23 ........................................................................................................5, 9, 10

## I.      PRELIMINARY STATEMENT

Plaintiff David Steinberg ("Named Plaintiff") and Defendant TD Bank, N.A. ("TD Bank" or "Defendant") move the Court to preliminarily approve the settlement of this action on behalf of Named Plaintiff and members of the Settlement Class[1] (each a "Plaintiff" and together, "Plaintiffs") in accordance with section 216(b) Fair Labor Standards Act ("FLSA").  A copy of the Settlement Agreement executed March 13, 2013, with exhibits ("Settlement Agreement") is attached as Exhibit A to the accompanying Notice of Motion for Preliminary Approval of the Proposed Settlement Agreement and Notice to Class ("Notice of Motion").  For the reasons set forth below, the Settlement Agreement represents a fair and reasonable settlement of a *bona fide* settlement and should be approved.

## II.     NATURE OF THE LITIGATION

On October 26, 2010, David Steinberg, a former employee of TD Bank filed a complaint against TD Bank in the United States District Court for the District of New Jersey.  The lawsuit claims that TD Bank violated the FLSA by failing to pay persons employed as "Banking Specialists" at its call center locations for time allegedly spent working off-the-clock.  Specifically, Named Plaintiff claims that Banking Specialists were required (1) to arrive before their shift to log-in to their various computer systems prior to clocking-in for payroll, and (2) to clock-out for their lunch break while attending "Lunch and Learn" training sessions.  Thereafter, the parties engaged in extensive discovery, including depositions of the Named Plaintiff and multiple opt-in plaintiffs, the exchange of numerous document requests, interrogatories, and requests to admit, and the production of thousands of pages of documents.

---

[1] The Settlement Class is defined in the Settlement Agreement as: "Individuals employed or formerly employed by [Defendant] who work(ed) as a Banking Specialist at some time between June 28, 2009 and August 3, 2012 and who timely consented to be party Plaintiffs in the above-captioned case."

On June 27, 2012, the Court conditionally certified a class consisting of all current or former Banking Specialists employed at TD Bank's four call centers for the period of March 31, 2008 through June 27, 2012.  (Dkt. No. 37).  Subsequently, notice forms were sent to 3,722 potential FLSA class members. Following a 45-day notice period, 363 people timely filed consent forms indicating their desire to become a party plaintiff to this action.

On December 7, 2012, the parties participated in mediation with former U.S. Magistrate Judge Joel Rosen.  At that time, and with the assistance of Judge Rosen, the parties reached a settlement in principle.  Since then, counsel prepared the settlement documents and negotiated certain details of the settlement, including, without limitation, the release and notice procedures to opt-in Plaintiffs.  As of the date of the filing of this motion, the parties have been able to arrive at a proposed settlement which they believe is fair, reasonable and adequate – and which avoids the ongoing expense and uncertainties of further litigation, including the possibility of decertification of the class, individual trials, and possible appeals.

## III.   <u>NATURE OF SETTLEMENT</u>

Named Plaintiff, Plaintiffs' Counsel and Defendant have agreed, subject to this Court's approval, to a settlement of this suit on behalf of all of the opt-in plaintiffs.  The terms of the settlement are set out in the Settlement Agreement attached to the Notice of Motion as Exhibit A. The settlement is a fair settlement of a *bona fide* dispute.  The settlement provides substantial benefits to the Plaintiffs in the following respects:

(a) Defendant will pay Plaintiffs and Plaintiffs' Counsel a total settlement payment of Nine Hundred Seventy-Five Thousand Dollars ($975,000.00) ("Total Settlement Payment").  This is an amount agreed to among the parties to compromise, settle and satisfy Plaintiffs' disputed claims for back wages, liquidated damages, interest, costs, attorneys' fees, and Administrative Costs.

(b) Of this Total Settlement Payment, subject to the Court's approval, Three Hundred Thousand Dollars ($300,000) will be paid to Plaintiffs' counsel in full and complete

2

settlement of all claims for attorneys' fees and costs associated with the litigation of this action.

(c) Plaintiffs' counsel has retained a third party administrator to establish and administer a Qualified Settlement Fund ("QSF") which will be used solely for the purpose of funding and distributing the Total Settlement Payment and for the purpose of reporting to federal, state and local governmental tax authorities. The Administration Costs shall be deducted from the Total Settlement Payment in an amount totaling twelve thousand eight hundred fifty-eight dollars and fifty-two cents ($12,858.52).

(d) The third party administrator will be responsible for the distribution from the QSF to each eligible Plaintiff of his or her Settlement Share (defined below) of the Total Settlement Payment unless a Plaintiff decides not to participate in the settlement by submitting a Settlement Rejection Form (a form of which is annexed to the Settlement Agreement as Exhibit C).

(e) Plaintiffs' counsel has calculated each individual Plaintiff's share of the total settlement, hereinafter referenced as the "Settlement Share." Specifically, Plaintiffs' Counsel has determined in good faith, consistent with their ethical responsibilities as class counsel, that each plaintiff's settlement amount would be calculated based on an alleged average of approximately 8.39 minutes per shift (or 41.952 minutes per week) of off-the-clock time per week that they worked during their recoverable time period[2] as well as thirty (30) minutes for each Lunch and Learn training session that they allegedly attended during the recoverable time period. All of this estimated unpaid time was then multiplied by each Plaintiff's average overtime hourly rate (i.e., one and one-half times their average hourly rate). No Plaintiff shall receive less than fifty dollar ($50.00) as a Settlement Share. A breakdown of the calculations and every plaintiffs' individual settlement amount is set forth in a Plan of Allocation, annexed to the Settlement Agreement as Exhibit A.

(f) In recognition of his service as Named Plaintiff (including filing this action, producing documents, and participating in a deposition and other discovery), and in exchange for a release of all wage and hour related claims against Defendant, subject to Court approval, Named Plaintiff David Steinberg will receive a service payment in the sum of four thousand dollars ($4,000) from the QSF, in addition to his Settlement Share. This amount will be paid out of the Total Settlement Payment and will be as determined and approved by the Court. If the Court should reduce the amount of this service payment, then the remaining amount will be redistributed to the Plaintiffs on a *pro rata* basis.

The proposed settlement was reached through extensive arms-length negotiations between competent legal counsel for the parties. Following discovery, the parties engaged in

---

[2] Each Plaintiff's recoverable time period was independently determined, consistent with statute, as the three years immediately preceding the filing of his/her Plaintiff Consent Form in this case.

mediation with former Magistrate Judge Joel Rosen.  Through the efforts of Judge Rosen and counsel, the parties reached a settlement in principle.  After reaching that agreement, Plaintiffs' counsel drafted and circulated a formal agreement. After numerous iterations, revisions, and edits, that Settlement Agreement has now been finalized and signed.  The substantive terms of the Settlement Agreement were negotiated vigorously and through zealous advocacy by counsel for the Parties.  Class counsel are experienced wage and hour class action attorneys who are well-qualified to evaluate the proposed Settlement Agreement on behalf of the Class.

Upon approval of this settlement, each opt-in plaintiff will be sent a Notice of Settlement ("Notice") and a Settlement Rejection Form, copies of which are annexed to the Settlement Agreement as Exhibits B and C.  The Notice is sufficient to inform each plaintiff of: (a) the Class definition; (b) the terms of the proposed settlement; (c) the proposed request for an award of attorneys' fees and expenses to counsel; (d) the method of calculating each plaintiff's Settlement Share, as well as, the proposed individual Settlement Share to be provided to each plaintiff; (e) each plaintiff's right to opt out of the case and thereby not participate in the proposed settlement. The Notice is clear in content and provides Class members with sufficient information to make an intelligent decision regarding as to whether to remain in the case and participate in the settlement or to opt out of the case.

## IV.    THE PROPOSED SETTLEMENT SHOULD BE APPROVED

Settlement of private actions for back wages claims pursuant to 29 U.S.C. § 216(b) must be approved by the district court. *Lynn's Food Stores, Inc. v. U.S.,* 679 F.2d 1350, 1353 (11th Cir. 1982); *see also Stalnaker v. Novar Corp.*, 293 F. Supp. 2d 1260, 1263 (M.D. Ala. 2003)  (a settlement resolving individual FLSA claims should be approved where it is a "fair and reasonable resolution of bona fide dispute over FLSA provisions").  The decision of whether to

approve the settlement of a collective action lies within the trial court's discretion. *Lynn's Food Stores, Inc.,* 679 F.2d at 1354. When exercising its discretion, however, the court should be mindful of the strong presumption in favor of finding a settlement fair. *See Farris* v. *J. C. Penney, Inc.,* 176 F.3d 706, 711 (3d Cir. 1999) ("A strong public policy exists in favor of settlement"); *Morales v. PepsiCo, Inc.*, 2012 U.S. Dist. LEXIS 35284, *3 (D.N.J. Mar. 13, 2012) (noting the "strong presumption in favor of settlement").

### A.      The Settlement is a Fair and Reasonable Settlement of a *Bona Fide* Dispute

Unlike class actions brought pursuant to Federal Rule of Civil Procedure 23, FLSA claims are brought as a "collective action," and each employee must affirmatively "opt-in" to the litigation. *Bredbenner* v. *Liberty Travel, Inc.*, No. 09-905, 2011 WL 1344745, *18 (D.N.J. April 8, 2011) (internal citations omitted). Because, "parties may elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later date," FLSA collective actions do not implicate the same due process concerns as Rule 23 class actions. *McKenna* v. *Champion Int'l Corp.,* 747 F.2d 1211, 1213 (8th Cir. 1984). "Thus, the Court does not assume the same 'fiduciary' role to protect absent class members as it would under Rule 23 when assessing a proposed settlement resolving FLSA claims" and the high standards for approval of a Rule 23 class action settlement do not apply. *Bredbenner,* 2011 WL 1344745, *18.

"To approve a settlement resolving claims under the FLSA, the Court must scrutinize its terms for fairness and determine that it resolves a bona fide dispute." *Bredbenner,* 2011 WL 1344745, *18 (citing *Lynn's Food Stores, Inc.,* 679 F.2d at 1354). Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement. *Lynn's Food Stores, Inc.,* 679 F.2d at 1353-54; *Bredbenner,* 2011 WL 1344745, *18; *Clark* v. *Ecolab Inc.*, No. 07-8623, 2010 WL 1948198, *24 (S.D.N.Y. May 11, 2010). If the

proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *Id. See also, Castagna* v. *Madison Square Garden, L.P.*, No. 09–10211, 2011 WL 2208614, *4 (S.D.N.Y. June 7, 2011) ("Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement.")

### 1.   The Parties Have a *Bona Fide* Dispute

This Agreement settles several disputed legal and factual issues.  Named Plaintiff filed the Complaint asserting that TD Bank failed to pay for all time worked, namely the time they were required to arrive before the start of their shift to prepare for their first call and the time they spent at Lunch and Learn training sessions.  The Company has maintained throughout the pendency of this action that it has a policy of paying Banking Specialists for all time worked and that it adhered to such policy.  The Company also maintains that it has analyzed payroll and time punch data to confirm that Banking Specialists were properly paid for all their work prior to the start of Plaintiffs' shifts and for their attendance at lunch time training sessions.  Following extensive discovery, the Parties have yet to resolve the appropriate statute of limitations to apply, whether Plaintiffs are owed for time worked and, if so, how many hours, whether the Plaintiffs failed to take advantage of the corrective measures in place, whether the Named Plaintiff is similarly situated to the proposed class, whether the *de minimus* defense applies the correct measure of damages for all these claims, and whether Defendant is liable for liquidated damages.  Thus, there are *bona fide* disputes between the Parties which are resolved through the arm's length settlement. *Bredbenner,* 2011 WL 1344745, *18.

### 2.   The Settlement is Fair and Reasonable

The terms of the Agreement are fair.  Courts look to the adversarial nature of a case as an indicator of the fairness of the settlement.  *Lynn's Food Stores,* 679 F.2d at 1353-54;

*Bredbenner,* 2011 WL 1344745, *18; *Clark,* 2010 WL 1948198, *24.  This settlement is the result of two and one-half (2 ½) years of hard-fought litigation which included significant discovery.  The litigation involved overtime claims of 363 Plaintiffs working in four different locations in four states.  Litigation of the FLSA issues involved the exchange of pleadings, in-depth investigations into the allegations and defenses, and a motion for conditional certification.  Discovery took place over nearly two years and involved thousands of pages of discovery, depositions of the Named Plaintiff and other opt-in plaintiffs, multiple sets of interrogatories, requests for admissions, and a supervised notice procedure to members of the class conditional certification which was vigorously opposed.  The hard fought nature of this action establishes that the settlement is fair.  *Id.*

The Parties' settlement negotiations also indicate fairness.  Courts recognize that the participation of an experienced independent mediator "virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."  *Bredbenner,* 2011 WL 1344745, *10; *see also Castagna*, 2011 WL 2208614, *5 ("Arm's-length negotiations involving counsel and a mediator raise a presumption that the settlement they achieved meets the requirements of due process").  From the outset of the litigation, the Parties engaged in settlement discussions and were represented by counsel in the negotiations.  In addition to the efforts of experienced counsel, an experienced wage-and-hour mediator and former Magistrate Judge, Joel Rosen, presided over extensive settlement negotiations.  Based on those negotiations, the Parties finally consummated and executed the Settlement Agreement on March 13, 2013.  The on-going negotiations and the involvement of an independent mediator, who himself was a federal Magistrate Judge, ensure the settlement's fairness.  *Id.*

7

The settlement carries other indicia of fairness.  Throughout the process, Plaintiffs were represented by competent counsel experienced in wage-and-hour class litigation.  *See Certification of Harris L. Pogust* ("HLP Cert.") at ¶ 6, attached hereto as Exhibit A; *Certification of Shawn Khorrami* ("SK Cert.") at ¶¶ 4-6.  The settlement was consummated after substantial discovery and litigation so that the Parties were fully informed of the legal issues and evidence.  As a result of the settlement, the Plaintiffs receive payment for alleged estimated unpaid wages, including overtime, for a period of three years plus liquidated damages.  Plaintiffs receive that recovery net of attorneys' fees, costs, and any service payments to representatives.  And, they receive that money now, avoiding the risks and delay inherent in continued litigation.  Each of these factors strongly suggests that the settlement is fair; together, they clearly establish fairness. *Bredbenner,* 2011 WL 1344745, *10 - *15.

## B.      The Settlement is Consistent with Public Policy

Like other jurisdictions, the Third Circuit recognizes a strong public policy in favor of settlement.  "Settlement agreements are encouraged as a matter of public policy because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts." *D.R. by MR. v. East Brunswick Bd. of Educ.,* 109 F .3d 896, 901 (3d Cir. 1997).  This settlement is consistent with that policy because it resolves a pending case on behalf of 363 Plaintiffs involving overtime claims, and multiple legal and factual issues.  And, the settlement avoids a jury trial and likely appeals.  Because the settlement represents a fair settlement of a *bona fide* dispute, public policy weighs heavily in favor of approval. *Id. See also Farris,* 176 F.3d at 711.

### C.   The Service Payment is Reasonable and Appropriate

Service payments are the norm in wage-and-hour class litigation.  *Bredbenner,* 2011 WL 1344745, *22; *Johnson v. Brennan,* No. 10-4712, 2011 WL 4357376, *21 (S.D.N.Y. Sept. 16, 2011); *Buccellato v. AT&T Operations, Inc.,* No. C10–00463, 2011 WL 4526673. *4 (N.D.Cal. June 30, 2011).  The purpose of the service payment is to compensate representative plaintiffs "'for the services they provided and the risks they incurred during the course of the litigation.'" *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 145 (E.D. Pa. 2000) (quoting *In re: Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)); *Hall v. AT&T Mobility LLC,* 2010 U.S. Dist. LEXIS 109355, *76 (D.N.J. Oct. 13, 2010).  Service payments compensate for services such as attending depositions, reviewing discovery materials and consulting with counsel.  *See Louisiana Mun. Police Employees Retirement System v. Sealed Air Corp.,* No. 03-4372, 2009 WL 4730185, *10 (D.N.J. Dec. 4, 2009).  Service payments also compensate for "the risk to the class representative in commencing suit, both financial and otherwise [and] the notoriety and personal difficulties."  *Stuart v. Radioshack Corp.,* No. C-07-4499, 2010 WL 3155645, *7 (N.D.Cal. Aug. 9, 2010).

Representatives in FLSA collective actions warrant the award of a service payment just like those in a Rule 23 class action.  Litigation in a large collective action like this is typically conducted through representative plaintiffs.  *See e.g, Oropeza v. AppleIllinois, LLC,* No. 06 C 7097, 2010 WL 3034247, *5 (N.D.Ill. Aug. 3, 2010); *Cranney v. Carriage Services, Inc.,* No. 2:07-01587, 2008 WL 2457912, *3 (D.Nev. June 16, 2008); *Geer v. Challenge Financial Investors Corp.,* No. 05-1109, 2007 WL 1341774, *5 (D.Kan. May 4,2007); *Smith v. Lowes Home Centers, Inc., 236* F.R.D. 354, 357-358 (S.D. Ohio. 2006); *Bradford v. Bed Bath & Beyond, Inc., 184* F. Supp. 2d l342, l344 (N.D.Ga. 2002).  Similarly, not each and every plaintiff

9

or opt-in plaintiff must testify at trial to prove liability or damages. *Martin v. Selker Brothers,* 949 F.2d 1286, 1298 (3d Cir. 1991).

Named Plaintiff in this action performed the same services and took similar risks as representatives in a Rule 23 class action. Named Plaintiff's services began with his initiative in filing the claim as a collective action that allowed more Banking Specialists to recover unpaid wages. Named Plaintiff represented the class by participating in discovery and settlement negotiations, offering testimony, working with Plaintiffs' counsel to develop the case and ultimately agreeing upon a fair and reasonable settlement for the class. Although trial was unnecessary, Named Plaintiff was prepared to testify at trial, and he participated in the mediation and settlement negotiations. *Hall,* 2010 WL 4053547, *13. The service payments are well within the range of such payments in this District and in wage-and-hour cases. Pursuant to the Settlement Agreement, Named Plaintiff will receive $4,000. Numerous courts in this District have awarded service payments equal to or higher than that proposed here. *See e.g., In re Ins. Brokerage Antitrust Litigation,* 579 F.3d 241, 282, 284 (3d Cir. 2009) (affirming $10,000 service payment); *Dewey v. Volkswagen of America,* 728 F. Supp. 2d 546, 609-610 (D.N.J. 2010) (awarding $10,000 service payment); *Serio* v. *Wachovia Securities, LLC,* 2009 U.S. Dist. LEXIS 27992, (D.N.J. March 31, 2009) (Court awarded 15 named plaintiffs a total of $195,000); *Louisiana Mun. Police Employees Retirement System,* 2009 U.S. Dist. LEXIS 112989, *29-30 ($25,000 service payment). The service payment is also within the range granted in other wage-and-hour cases. *See, e.g., Bredbenner,* 2011 WL 1344745, *23 - *24 (granting service payments of $10,000 each to eight representatives).[3] As the service payment sought is both reasonable and

---

[3] *See also In re Janney Montgomery Scott LLC Financial Consultant Litigation,* No. 06-3202, 2009 WL 2137224, *12 (E.D.Pa. July 16,2009) ($20,000 service payment in FLSA and Pennsylvania wage and hour case); *Mentor* v. *Imperial Parking Systems, Inc.,* No. 05-7993, 2010

appropriate, the Court should approve the request. *Hall,* 2010 WL 4053547, *13; *Bredbenner,* 2011 WL 1344745, *23 - *24.

> **D.      The Request for Attorneys' Fees is Reasonable.**

The Third Circuit has established two methods for evaluation of an award of attorneys' fees: (1) the lodestar approach, and (2) the percentage of the recovery approach.  *In re Diet Drugs Product Liability Litig.*, 582 F.3d 524, 540 (3d Cir. 2009); *In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006). Under the common fund doctrine, "a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *In re Cendant Corp. Sec. Litig.*, 404 F. 3d 173, 187 (3d Cir. 2005)(citation omitted).  In common fund cases, the percentage-of-recovery method is generally favored. *In re Diet Drugs*, 582 F.3d at 540 (citing *Krell v. Prudential Ins. Co.*, 148 F.3d 283, 333 (3d Cir. 1998)).

In determining what constitutes a reasonable percentage fee award in the Third Circuit, a district court must consider ten factors: (1) the size of the fund created and the number of beneficiaries; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups,

---

WL 5129068, *1 (S.D.N.Y. Dec. 15, 2010) (awarding a $40,000 and $15,000 service payment in New York Labor Law class action and FLSA case); *Torres v. Gristede's Operating Corp.,* Nos. 04-3316, 08-8531, 08-9627, 2010 WL 5507892, *7 (S.D.N.Y. Dec. 21, 2010) ($15,000 service payment in New York Labor Law class action and FLSA case); *Clark,* 2010 WL 1948198, *9 (awarding $10,000 service payment to named plaintiffs for various state class actions and FLSA wage and hour cases).

such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement. *In re Diet Drugs*, 582 F.3d at 541 (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000)).

### 1. The Size and Nature of the Fund Created and the Number of Class Members Benefitted by the Settlement.

The Settlement Class here is comprised of 363 Banking Specialists who previously opted-in to this case, and who will share in a total settlement payment of $975,000, less attorneys' fees and expenses, administrative costs, and the service payment. Thus, "the settlement amount is significant, especially in view of the risks and obstacles to recovery presented in this case." *Lenahan v. Sears, Roebuck & Co.*, 2006 U.S. Dist. LEXIS 60307, *59 (D.N.J. July 10, 2006).

### 2. The Absence of Objections.

All of the opt-in plaintiffs filed consents allowing the Plaintiffs' Counsel to act as their representative and to make decisions on their behalf on all matters, including the fairness of the settlement. *See* Consents to Join filed in the Docket, generally. (Dkt Nos. 44-82). Named Plaintiff has authorized and approved the settlement, and Plaintiffs' Counsel has also found the settlement to be fair and reasonable. The circumstances here warrant approval of the fee request.

### 3. The Skill and Efficiency of Plaintiffs' Counsel.

The skill and efficiency of the attorneys involved is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 16, 194 (E.D. Pa. 2000). Here, Plaintiffs' counsel includes attorneys with

significant wage and hour law and class action experience. *HLP Cert.* at ¶ 6; *SK Cert.* at ¶¶ 4-6. Likewise, counsel for Defendant has extensive wage and hour law and class action experience. The settlement entered into with Defendant is a reflection of the counsel's skill and experience. *See In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 261 (D. Del. 2002) (class counsel "showed their effectiveness through the favorable cash settlement they were able to obtain"). Thus, this factor too weighs in favor of approval of Plaintiffs' Counsel's requested attorneys' fees. *See Lenahan*, 2006 U.S. Dist. LEXIS 60307.

### 4.    *Complexity and Duration of the Litigation.*

FLSA claims and wage-and-hour law enforcement through litigation has been found to be complex by the Supreme Court and lower courts. *See, e.g. Barrentine v. Arkansas-Best Freight Sys.*, 450 U.S. 728, 743 (1981); *Lenahan*, 2006 U.S. Dist. LEXIS 60307, *61-62. As discussed above, this case involved many complex factual and legal issues.  Counsel have litigated this case for two and a half (2½) years.  This included the depositions of multiple opt-in plaintiffs concerning the instructions received on clocking in and out each day and for Lunch and Learns and for correcting mistakes made when clocking in and out, reviewing thousands of documents (both paper and electronic ("ESI")), briefing a §216(b) collective action motion, answering written discovery and propounding written discovery, engaging in discovery disputes, enlisting of a professional mediator experienced in wage-and-hour litigation, analysis of wage-and-hour records for 363 opt-in plaintiffs, formulating damage models, and the negotiation of recoveries.

Settlement negotiations in this case were also complex.  The parties needed to reach a settlement that would take into account the individual facts and data underlying each individual Banking Specialist's claim, based on his or her (1) hourly wage, (2) weeks of employment within the statute of limitations, and (3) hours of alleged overtime worked within the statute of

13

limitations.  In light of the above, the parties respectfully submit that the complexity of the issues involved in the prosecution of this litigation also support the requested fee.  *See id.*

### 5.      *The Risk of Nonpayment.*

The risk of nonpayment in complex cases such as this one is "very real and is heightened when Plaintiffs' Counsel press to achieve the very best result of their clients."  *In re AremisSoft*, 210 F.R.D. 109, 134 (D.N.J. 2002).  Here, the Defendant had numerous defenses in this litigation, to both liability and the calculation of damages, which posed substantial risks to finding of liability and damages.  These defenses included:

- The time at issue is *de minimis*;

- Plaintiffs did not report any off-the-clock work and/or avail themselves of the opportunity to correct their reported work time;

- Banking Specialists were specifically instructed (by invites and their managers) not to clock-out when they attended a Lunch & Learn session;

- There is no uniform written policy requiring off-the-clock work, nor was there a culture at TD Bank requiring such work;

- TD Bank took reasonable efforts to comply with the law; and

- The facts and defenses were of such an individualized nature that class treatment was not appropriate.

In light of the defenses and arguments asserted by Defendants, Plaintiffs faced the very real risk that their claims could have been mooted at any point during the proceedings or that the class would have been decertified.

Additionally, Plaintiffs' counsel risked non-payment during the period of their representation since they represented Plaintiffs entirely on a contingent basis, with no retainer

14

fees or expenses paid at the beginning of the litigation.  Counsel took on the costs of litigation[4] despite their lack of certainty that the Court would find that Defendant violated the FLSA, the potential for decertification of the class, and the risk that Plaintiffs' damages claims would be deemed *de minimis* and/or that the number of hours at issue would be miniscule, and, generally, assumed the risk of changes in the law and appeals.  Accordingly, the risk of non-payment weighs in favor of approving the fee request. *See Lenahan*, 2006 U.S. Dist. LEXIS 60307, * 63- 64; *Serio*, 2009 U.S. Dist. LEXIS 27992, * 33.

### 6.     The Time Devoted to this Case by Plaintiffs' Counsel.

Collectively, class counsel PBM has expended 442 attorney hours working on this case, over the two and one-half (2½) years the case has been actively litigated.  *HLP Cert.* at ¶ 4. This does not include time spent by staff on the case. *Id.*  Class counsel Khorrami has expended 173 total hours, between attorneys and staff, over the two and one-half (2½) years the case has been actively litigated. *SK Cert.* at ¶ 7.  As discussed above, Class Counsel has spent substantial amounts of time reviewing voluminous discovery materials, briefing multiple substantive motions before this Court, and has spent tremendous efforts negotiating and arriving at the Proposed Settlement. *HLP Cert.* at ¶ 3; *SK Cert.* at ¶ 7.  Thus, the amount of time and effort Class Counsel spent on this litigation supports the fee request.  *See Lenahan*, 2006 U.S. Dist. LEXIS 60307, * 63-64.

### 7.     Awards in Similar Cases.

The seventh *Gunter* factor involves a comparison of the fee request with attorneys' fees awarded in similar cases.  Attorneys' fees of thirty (30%) percent, or more, are common in this Circuit.  *See In re Rite Aid Corp. Sec. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) (review of 289

---

[4]  Specifically, class counsel have incurred out-of-pocket expenses totaling $21,543.82. *HLP Cert.* at ¶ 5; *SK Cert.* at ¶ 8.

settlements demonstrates "average attorneys' fees percentage [of] 31.71%" with a median value that "turns out to be one-third"); *General Motors*, 55 F.3d at 822. The Third Circuit has noted that fee awards generally range from 19% to 45% of the settlement fund when the percentage-of-recovery method is utilized to assess the reasonableness of requested attorneys' fees. *See In re Gen. Motors*, 55 F.3d at 822. Likewise, attorneys' fees of approximately thirty-three percent (33%) to thirty-five (35%) percent of the common fund are also regularly awarded in labor and employment class actions. *See, e.g., See In re Safety Components, Inc. Sec. Litig.,* 166 F. Supp. 2d 72, 102 (D.N.J. 2001) (granting award of 33 1/3% in common fund case and citing to ten cases from this Circuit holding the same); *Erie County Retirees Assoc. v. County of Erie, Pennsylvania,* 192 F. Supp. 2d 369, 382-83 (W.D. Pa. 2002) (38% of common fund was awarded in ADEA case); *Bredbenner*, 2011 WL 1344745, *21 (approving an award of 32.6% of the settlement fund). The attorneys' fees request of one-third of the settlement fund also comports with privately negotiated contingent fees negotiated on the open market. *See Bredbenner*, 2011 WL 1344745, *21.

Thus, the percentage requested in this matter (30.77%) is reasonable when compared to fee awards in other similar cases in this Circuit.

### 8.   *Value of Benefits Attributable to Efforts of Class Counsel and Innovative Terms of Settlement.*

In seeking recovery for Plaintiffs, Plaintiff's counsel did not rely on the work of others, but rather utilized their own resources to litigate this matter. Therefore, this recovery is based on the efforts of Plaintiffs' counsel and Defendant's counsel with the assistance of a capable and experienced mediator.

V.      **CONCLUSION**

The Agreement is a fair settlement of a *bona fide* dispute and strong public policy encourages its approval.  The parties respectfully request that the Court grant approval of the settlement as an adequate, fair, and reasonable settlement of the Plaintiffs' interests, and approve the service payment to Named Plaintiff.

Respectfully submitted,


POGUST, BRASLOW AND MILLROOD, LLC               FISHER & PHILLIPS LLP

*/s/ Andrew J. Sciolla*                          */s/ Kathleen Caminiti*
Andrew J. Sciolla, Esq.                          Kathleen Caminiti, Esq.
Harris L. Pogust, Esq.                           Jonathan Shapiro, Esq.
Eight Tower Bridge, Suite 1520                   430 Mountain Avenue
161 Washington Street                            Murray Hill, NJ 07974
Conshohocken, PA 19428                           Phone: (908) 516-1050
Phone:  (610) 941-4204                           Attorneys for Defendant


Khorrami, LLP

*/s/ Shawn Khorrami*
Shawn Khorrami, Esq.
Robert J. Drexler, Jr., Esq.
Bevin E. Allen, Esq.
444 S. Flower Street 33rd Floor
Los Angeles, CA 90071
Phone:  (213) 596-6000

Counsel for Plaintiff and Opt-in Plaintiffs

17